IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **J.M. o/b/o S.M.T** | ) | |
| | ) | **Case No.** |
| **Plaintiffs,** | ) | |
| | ) | **Hon.** |
| v. | ) | |
| | ) | |
| **FLUSHING COMMUNITY SCHOOLS,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GENESEE INTERMEDIATE SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Lisa B. Kirsch Satawa (P52675)
Kirsch Daskas Law Group, PLLC.
Attorney for Plaintiff
3883 Telegraph Road, Suite 105
Bloomfield Hills, Michigan 48302
(248) 792-3060
lisa@kdlawgroup.com

**PLAINTIFF'S COMPLAINT**

PARTIES

1. J.M. on behalf of S.M.T., a minor child, is the Plaintiff in this matter. J.M is the parent of S.M.T., a student with a disability as defined by the Individuals with

1

Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. S.M.T. is currently 14-years old. Plaintiff resides in Genesee County, Michigan.

2. Flushing Community Schools ("FCS") is a Defendant in this matter. FCS is a municipal corporation located in Genesee County, Michigan. As a recipient of federal funding, it is responsible for providing and administering a Free and Appropriate Public Education ("FAPE") to S.M.T. and all students with disabilities. FCS has the capacity to sue and be sued.

3. Genesee Intermediate School District ("GISD") is a Defendant in this matter. GISD is a municipal corporation located in Genesee County, Michigan. As a recipient of federal funding, it is responsible for providing and administering a FAPE to S.M.T. and all students with disabilities. FCS has the capacity to sue and be sued.

## JURISDICTION, VENUE, AND EXHAUSTION

4. This Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(2)(A) and 20 U.S.C. § 1415(i)(3)(A).

5. This is a civil action over which this Court has original and exclusive jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6. Declaratory and injunctive relief are authorized by 28 U.S.C. § 2201.

7. This Complaint is filed within 90 days of the Administrative Law Judge's Decision and Order, and therefore is timely.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), as the parties are located in the Eastern District of Michigan and all events that are the subject of this Complaint occurred within this district.

9. Plaintiff has exhausted all administrative remedies available to her under the IDEA as required by 20 U.S.C. § 1415(i)(2).

10. Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), J.M. respectfully requests this Court award her reasonable attorney fees.

## FACTS

11. S.M.T is a student with a disability, as that term is defined under the IDEA, 20 U.S.C. § 1400 *et seq*.

12. As a student with a disability, S.M.T. is entitled to various protections under the IDEA, including an individualized educational program ("IEP") and FAPE.

13. In August of 2019, because of S.M.T.'s severe impairments, FCS placed S.M.T. in the elementary autism classroom at Elmer Knopf Learning Center ("Elmer Knopf"), located within the GISD.

14. S.M.T.'s disability causes him to engage in behavior that is aggressive and self-harmful, and poses a risk to his mother, J.M., siblings, other students, teachers, and other individuals around him.

15. S.M.T. had a Behavioral Intervention Plan ("BIP") in place due to significant aggressive behavior, as well as an IEP.

16. Despite having the IEP, S.M.T. was not progressing in his education and became increasingly more aggressive.

17. J.M. attended IEP meeting with the Defendants to discuss S.M.T.'s progress, or lack thereof, and provided a letter from S.M.T.'s neurologist since infancy, Dr. Jules Constantinou, who recommended residential placement for S.M.T.

18. J.M. also provided the Defendants with a letter from S.M.T.'s psychiatrist, Dr. Janet Warner, who concurred in Dr. Constantinou's recommendation that residential placement would be beneficial for S.M.T.

19. Despite the recommendations, the Defendants denied J.M.'s request for residential placement, because S.M.T.'s "behavior was typical to his peers and students with other behaviors just like him."

20. On or about October 19, 2022, J.M., filed a due process complaint on S.M.T.'s behalf with the Michigan Department of Education ("MDE").

21. MDE forwarded the complaint to the Michigan Office of Administrative Hearings and Rules ("MOAHR") where it was set for a hearing.

22. The hearing was conducted from May 1–4, 2023, by Administrative Law Judge ("ALJ") Michael J. St. John, wherein testimony was received from J.M, school officials and teachers, other employees of the Defendants, Dr. Constantinou, Dr. Warner, a Child Protective Services ("CPS") caseworker, S.M.T.'s younger brother, and medical personnel, among other witnesses.

23. Briefs were submitted after the hearing and ALJ St. John issued a Decision and Order on August 23, 2023, dismissing J.M.'s complaint, finding that she did not meet her burden to establish S.M.T.'s educational benefit will improve in residential placement, "much less that residential placement is necessary for S.M.T. to achieve a FAPE.

24. J.M. reserves the right to request to reopen the record.

## STANDARD OF REVIEW

25. The IDEA's provision governing federal court review of state administrative decisions states that: "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of evidence, shall grant such relief as the court determines is appropriate." *Knable v Bexley City School District,* 238 F.3d 755, 764–765 (2001), citing 20 U.S.C. 1415(e)(2).

26. "The Supreme Court has construed this provision to mean that initial reviewing courts should make 'independent decisions' based on the preponderance of the evidence, but also should give 'due weight' to the determinations made during the state administrative process." *Id*. at 764, citing *Board of Educ. v. Rowley*, 458 U.S. at 206, 102 S. Ct. 3034 (1982).

27. "Although reviewing courts must not 'simply adopt the state administrative findings without an independent re-examination of the evidence,' neither may they 'substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.*, citing *Doe v. Metropolitan Nashville Public Schools,* 133 F.3d 384, 387 (6th Cir. 1998), and *Doe v. Bd. Of Educ. Of Tullahoma City Schools* 9 F.3d 455, 458 (6th Cir. 1993).

28. "According to this 'modified' *de novo* standard of review, a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." *Id.*, citing *U.S. v. Tucker,* 136 F.3d 495, 503 (11th Cir. 1998).

**CLAIM FOR RELIEF I – DEFENDANTS DID NOT COMPLY WITH THE PROCEDURES SET FORTH IN THE IDEA**

29. To remain compliant with IDEA, and thereby receive federal funding, a State must demonstrate that "it has in effect a policy that assures all handicapped children the right to a 'free appropriate public education,'" which must be "tailored to the unique needs of the handicapped child by means of an 'individualized educational program (IEP).'" The IEP must be prepared (and reviewed at least annually) by school officials with participation by the child's parents or guardian." *Rowley*, 458 U.S. at 180–181.

6

30. When a suit is brought pursuant to IDEA, the court has a two-part inquiry. First, "the court must determine whether the school system has complied with the procedures set forth in the IDEA." *Deal v. Hamilton County Board of Education,* 392 F.3d 840, 853 (6th Cir. 2004). Second, "the court must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits." *Id.*, citing *Rowley*, 458 US at 206–207.

31. ). "Parties challenging an IEP have the burden of proving by a preponderance of the evidence that the IEP devised by the school district is inappropriate." *Id*. at 840. Moreover, any "review of the IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endrew F. ex rel Joseph F. v. Douglas County School District RE-1,* 580 U.S. 386, 399 (2017), citing *Rowley*, 458 U.S. at 206-207).

32. An IEP "must confer a *'meaningful* educational benefit.'" *Deal*, 392 F.3d at 862; citing *T.R. ex rel. N.R. v. Kingwood Township Bd. of Educ.,* 205 F.3d 572, 577 (3rd Cir. 2000) (emphasis in original).

33. Such benefit "must be gauged in relation to a child's potential." *Id.*, citing *Kingwood*, 205 F3d at 578.

34. Moreover, FAPE must provide "more than a trivial benefit." *Id.* (citation omitted). This benefit also "must be more than *de minimis.*" *Id*. (citation omitted).

35. "[A] school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. "Focus on the particular child is the core of the IDEA." *Id*. at 400.

36. A child's IEP need not aim for grade-level advancement if that is not a reasonable prospect, but every child should have the chance to meet challenging objectives. *Id*. at 402. "The adequacy of an IEP turns on the unique circumstances of the child for whom it was created." *Id*. at 403. "When all is said and done, a student offered an educational program providing 'merely more than *de minimis'* progress from year to year can hardly be said to have been offered an education at all." *Id.* at 402–403.

37. In some cases, in order to achieve FAPE, a child may require residential placement at an appropriate educational facility. The IDEA "indirectly requires school districts to provide residential placements by defining elementary and secondary schools to include 'residential schools.'" *Clovis Unified School Dist. v. California Office of Administrative Hearings,* 903 F.2d 635, 638 (9th Cir. 1990), citing 20 U.S.C. § 1401(a)(9) and (10).

38. There is no further explanation in the Act, but the pertinent regulations provide that "[i]f placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the

program, including non-medical care and room and board must be at no cost to the parents of the child." *Id*. at 639, citing 34 C.F.R. § 300.302.

39. "[M]ost courts confronted with the question whether residential placement is necessary to meet the goals of an individual education plan have answered in the affirmative." *Kruelle v. New Castle County School Dist.*, 642 F.2d 687, 692 (3rd Cir. 1981).

40. "Analysis must focus on whether . . . placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social, or emotional problems that is necessary quite apart from the learning process." *Clovis Unified*, 903 F2d at 643.

41. The Defendants did not provide an IEP that met these IDEA requirements. First, it was not tailored to the unique needs of S.M.T. This is evidenced by GISD's own statement that they denied residential placement for him because his "behavior was typical to his peers and students with other behaviors just like him." This, on its face, speaks of GISD's intent to treat S.M.T. like his peers and other students. That is the opposite of what is required by the IDEA.

42. Moreover, the IEP did not provide meaningful educational benefits that were more than trivial or de minimis. The testimony in the administrative hearing spoke to three main goals in the IEP: (1) utensil use, (2) naming numbers, and (3) identifying letters. On two out of three of these goals, the teacher, Ms. Nancee

9

Walker, reported minimal to no progress, to the extent that she "was unsure if [S.M.T.] was going to actually meet that goal by his next IEP."

43. Ms. Walker, blamed these de minimis results on behavior, regression, and medical needs, showing that these needs are inextricably linked to S.M.T.'s ability to learn.

44. S.M.T. did not make progress on his IEP goals, nor did he have IEP goals which were appropriate for his disability and ability to learn. As such, he was not afforded a free, appropriate public education, as required by the IDEA.

### CLAIM FOR RELIEF II – S.M.T.'S IEP WAS NOT REASONABLE CALCULATED TO ENABLE HIM TO RECEIVE EDUCATION BENEFITS.

45. "Where basic self-help and social skills such as toilet training, dressing, feeding, and communication are lacking, formal education begins at that point." *Battles v. Pennsylvania,* 629 F.2d 269, 275 (3rd Cir. 1980).

46. S.M.T. still struggles with all these skills. The IEP did attempt to address some of these issues, but did so unsuccessfully.

47. For instance, an IEP goal was to utilize utensils, but the teacher was "unsure if he was going to actually meet that goal." Likewise, learning to identify numbers and letters would have potentially improved S.M.T.'s communication, but the teacher described little to no progress in these skills, whereas J.M. testified that S.M.T. was never able to reproduce these skills at home.

10

48. An IEP must confer a "meaningful educational benefit" that is "gauged in relation to a child's potential." S.M.T. did not receive this meaningful benefit. He was showing little to no improvement by April of 2022, and his behaviors only worsened over time.

49. Whatever educational benefit S.M.T. did receive was de minimis at best, and "[w]hen all is said and done, a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all."

### CLAIM FOR RELIEF III – THE VIOLATION RESULTED IN SUBSTANTIVE HARM, AND THUS CONSTITUTES A DENIAL OF FAPE.

50. The ineffective IEP goals have led to S.M.T. making de minimis progress at best.

51. Meanwhile, his behavioral issues have only worsened; they are "horrific," as his neurologist described, and include many instances of both self-harm (including head-banging to the point of breaking through a glass window) and harm of others (including hitting, scratching, and biting).

52. Without first getting help for his behavioral issues, S.M.T. is unable to learn. Both of S.M.T.'s teachers testified regarding S.M.T.'s aggression and its impact on his education. Other school employees who interacted with S.M.T. on a regular basis, including his bus driver, testified to S.M.T.'s self-harm and attacks on others.

Even a CPS worker testified as to her concerns for S.M.T.'s safety at Elmer Knopf.

53. S.M.T.'s behaviors unquestionably cause him harm. The CPS worker, Ms. Anya Lewis, testified that because of S.M.T.'s medical issues and previous concussions, there were concerns that any further injuries could be detrimental ot S.M.T. "So waiting until he injured himself before providing safety mesasures was concerning at that point."

54. Avoiding those behaviors is a "basic self-help skill" and should be the focus of his formal education. Nonetheless, Elmer Knopf focused on goals involving utensil use and communication that ultimately he made little to no progress on and could not reproduce outside of the classroom environment. He received no meaningful educational benefit from Elmer Knopf. Without a meaningful educational benefit, there can be no FAPE. S.M.T. was denied FAPE in this case and suffered significant harm as a result.

### CLAIM FOR RELIEF IV – RESIDENTIAL PLACEMENT IS THE ONLY FORM OF EDUCATION THAT CAN MEET THE UNIQUE NEEDS OF S.M.T.

55. "If placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the program, including non-medical care and room and board, must be at no cost to the parents of the child." *Clovis Unified*, 903 F.2d at 639.

56. S.M.T.'s neurologist testified that residential placement is "necessary." His psychiatrist likewise wrote a letter to the Defendants requesting residential placement for S.M.T.

57. The lack of progress on IEP goals, as well as the safety issues surrounding S.M.T.'s behavior and the fact that he has been injured multiple times while in their care, demonstrate that Elmer Knopf cannot meet the needs of this student. A residential placement is the only form of education that can adequately address S.M.T.'s needs.

58. "Analysis must focus on whether . . . placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social, or emotional problems that is necessary quite apart from the learning process." *Clovis Unified*, 903 F2d at 643.

59. S.M.T.'s behaviors and medical needs are not segregable from the learning process. Both teachers acknowledged his aggression and the impact it had on his ability to learn. Ms. Walker testified S.M.T. had, in fact, regressed in part due to his behavioral issues.

60. "It may be possible in some situations to ascertain and determine whether the social, emotional, medical, or educational problems are dominant and to assign responsibility for placement and treatment to the agency operating in the area of that problem." *North v District of Columbia Bd. of Ed.*, 471 F.Supp. 136, 141

(1979). "In this case, all of these needs are so intimately intertwined that realistically it is not possible for the Court to perform the Solomon-like task of separating them." *Id*. This is one of those cases.

61. Moreover, "[o]nly when alternatives exist must the court reach the issue of which is the least restrictive. If day school cannot provide an appropriate education, it is, by definition, not a possible alternative." *Kruelle*, 642 F2d at 695 (citation omitted).

62. Elmer Knopf and other day programs are not a possible alternative for S.M.T. because they simply cannot provide him with an appropriate education, as evidenced by his lack of progress on skills and his increasingly aggressive behavioral issues.

## CONCLUSION AND RELIEF REQUESTED

The IEP for S.M.T. did not comply with the procedures set forth by the IDEA and was not reasonably calculated to enable him to receive an educational benefit. This violation has resulted in substantial harm to S.M.T. and denied him FAPE. A residential placement is the only appropriate form of education that can meet S.M.T.'s unique needs.

**WHEREFORE,** Plaintiff, J.M., on behalf of S.M.T., respectfully requests this Honorable Court REVERSE the findings of the ALJ and enter an Order allowing residential placement for S.M.T. and award reasonable attorney fees pursuant to 20 U.S.C. §1415(i)(3)(B)(i).

Respectfully submitted,

Date: November 14, 2023

_____
Lisa B. Kirsch Satawa (P52675)
Attorney for Plaintiff